AO 91 (Rev. 11/11)  Criminal Complaint

**LODGED**
CLERK, U.S. DISTRICT COURT
7/2/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ___LM___ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Central District of California

**FILED**
CLERK, U.S. DISTRICT COURT
July 6, 2021
CENTRAL DISTRICT OF CALIFORNIA
BY: D. Brown  DEPUTY

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| ROYCE ROCO LANZISERA | ) | Case No. |
| | ) | 5:21-mj-00463 |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __March 30, 2021__ in the county of __San Bernardino__ in the __Central__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(o) | Possession of Machine Guns. |

This criminal complaint is based on these facts:
See Affidavit.

☑ Continued on the attached sheet.

/s/ pursuant to Fed. R. Crim. P. 4.1
*Complainant's signature*

Paul Kirwan, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: July 6, 2021

*Judge's signature*

City and state: Riverside, California  |  Honorable Kenly Kiya Kato, Magistrate Judge
*Printed name and title*

AUSA: Peter Dahlquist

**AFFIDAVIT**

I, Paul Kirwan, being duly sworn, declare and state as follows:

**PURPOSE OF AFFIDAVIT**

1. This affidavit is made in support of a criminal complaint and arrest warrant against Royce Roco LANZISERA for a violation of 18 U.S.C. § 922(o) (Possession of Machineguns).

2. The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

**BACKGROUND OF AFFIANT**

3. I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed since May 2017. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy. I am an ATF Interstate Nexus Expert and routinely examine firearms and ammunition to determine their origins and travel in interstate commerce. During my time as an ATF SA, I have testified as an expert witness in federal court, participated on multiple different task forces, and assisted in multiple

narcotics and firearms investigations. Based on my training and experience, and on my conversations with other ATF SAs, I am familiar with the investigation of federal firearms and drug crimes. I have experience in handling and utilizing confidential informants for information as well as planning controlled purchases for firearms and narcotics.

4.  I also have experience reviewing financial records and documents in order to identify illegal firearms manufacturing and trafficking activity as well as other financial crimes. Prior to working with ATF, I worked as a financial investigator where I would review financial documents and transactions in order to identify potential criminal activity.

## SUMMARY OF PROBABLE CAUSE

5.  On March 31, 2021, officers executed a federal search warrant for LANZISERA's residence and business and found approximately 19 firearms (including 3 machineguns and one firearm with a silencer equipped), 7 silencers, more than 1,700 pounds of ammunition, firearm manufacturing equipment, numerous firearm parts, and over $33,000 in cash. During a *Mirandized*, audio-recorded interview, LANZISERA admitted possessing the firearms that were seized since around the time the pandemic began, but he admitted to possessing an AK-47 style rifle that was found for about three years. LANZISERA further admitted he may have "given" some guns to people and that he was threatened into "handing out a couple," but denied that he was a gun dealer.

**STATEMENT OF PROBABLE CAUSE**

6. Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

    **A. Initiating Investigation of LANZISERA for Trafficking Privately Made Firearms ("PMFs") commonly known as Ghost Guns**

7. During two different investigations, I learned that suspects reported to law enforcement that a person named "Royce" was manufacturing and distributing ghost guns from a forklift business in the City of Ontario.

8. Based on that information, I discovered a business called Inland Empire Lift, a company specializing in the sales of forklifts, located at 425 S. Euclid Avenue, Ontario, California 91762. I also found a Yelp review for the business and on the Yelp webpage under the "About the Business" section, there is a small photo of a male named "Royce L." with the title "business owner." I queried databases and learned that LANZISERA was the owner of Inland Empire Lift in the City of Ontario.

9. I reviewed certified conviction documents and other criminal history reports for LANZISERA and learned that LANZISERA was convicted on or about July 19, 2002, for a violation of California Penal Code Section 12020(a)(1), Manufacture, Import, Sale, or Possession of Undetectable Firearm, in the Superior Court for the State of California, County of Riverside, Case Number RIF103923. Riverside County Case RIF103923 originally included a gang enhancement charge of

a violation of California Penal Code Section 186.22(b)(1) for committing a crime as a participant of a criminal street gang. However, the enhancement was dismissed pursuant to the plea agreement. As explained further below, on or about March 30, 2021, I learned that this felony conviction had been reduced to a misdemeanor on March 18, 2021.

10. When querying LANZISERA using law enforcement databases, I learned that LANZISERA had previously admitted to membership to the Mira Loma Dodd Street criminal street gang and used the moniker "Speedy."

    **B.    Analysis of LANZISERA's Financial Records Show He Spent About $106,000 on Firearm Parts and Accessories During 11-Month Period**

11. I sought and received LANZISERA's bank records from JPMorgan Chase Bank, US Bank, and PayPal. The records show that from February 2020 to January 2021, LANZISERA spent at least $106,000 on firearms-related purchases. Among the purchases, I identified transactions that led me to believe that, in addition to assembling ghost guns, LANZISERA was also manufacturing machineguns and firearm silencers. For example, on multiple occasions, LANZISERA appears to have purchased items described as oil filters like, "11 PCS Modified Car Fuel Filter Set Silver Aluminum alloy Car accessorie" and "14pcs Car Modified Fuel Filter Portable Filter Automotive 7075 Aluminum US STOCK." These filters can serve legitimate automotive purposes. However, based on my training and experience, illegal firearms manufacturers will commonly purchase fuel filters or threaded oil filter kits to manufacture or assemble silencers. The Gun

Control Act defines the terms "firearm silencer" and "firearm muffler" to include "any combination of parts, designed or redesigned, and intended in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication."[1]  As I understand it, the law is intended to prevent the sale of incomplete silencer kits that can easily be converted into silencers.[2]  In my training and experience, these oil or fuel filter parts kits contain all of the necessary parts to assemble a silencer that can be easily attached to the barrel of a firearm.

    12. With respect to machine gun parts, I noticed that on or about February 12, 2020, LANZISERA purchased a "Glock Select Fire Switch (only allowed for DEKO)."  A "Glock switch" is a firearm part that constitutes a machinegun.  The Gun Control Act and the National Firearms Act define a "machinegun" as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger, and the term also includes "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun."[3]  In my training and experience, Glock switches are designed specifically to override the trigger bar of a Glock-type semi-automatic pistol

---

[1] 18 U.S.C. § 921(a)(24).

[2] *See United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 515 (1992).

[3] 18 U.S.C. § 921(a)(23) (incorporating the definition from 26 U.S.C. § 5845(b)).

and prevent the trigger bar from capturing the firing pin while the gun is firing.  As a result, a Glock switch is designed to convert a Glock-type semi-automatic pistol into a machinegun, and, therefore, the Glock switch is itself a machinegun.

13. The records I reviewed also showed LANZISERA was buying other Glock-style gun parts.  Additionally, around the same time LAZISERA purchased the "Glock Select Fire Switch (only allowed for DEKO)," he also purchased a manual on converting AR-15's into machine guns: "Full Auto, Volume 1 AR-15 Modification Manual 9780879470616 | Brand New."

    C.    **Result of Search Warrant for Email Accounts Linked to LANZISERA's Purchases**

14. On February 26, 2021, the Honorable Kenly Kiya Kato, United States Magistrate Judge, signed warrants authorizing law enforcement officers to search data within the Yahoo! (C.D. Cal. Case No. 5:21-MJ-00132) and Google (C.D. Cal. Case No. 5:21-MJ-133) accounts that were linked to financial accounts LANZISERA was using to purchase firearm parts.

15. The results of the Yahoo! and Google searches confirmed LANZISERA was purchasing firearm parts from all over the country, but also showed that LANZISERA was making bulk cash purchases from local firearm dealers.  For example, I reviewed an email thread between LANZISERA using his InlandEmpireLift@Yahoo.com email address and a local firearm dealer also engaged in the business of selling firearms parts and accessories, using their business email address.  In the exchange, LANZISERA stated he needed "40 or 50 complete kits,"

and that he had the "money in hand." The firearm dealer confirmed that they could accommodate him as soon as a new shipment arrived, and they coordinated the logistics for when LANZISERA could purchase the "kits." This sample email exchange showed that in addition to buying parts online, LANZISERA was also paying cash to local firearm dealers to buy as many as 50 complete gun kits that he could then assemble.

    **D.    Results of Search Warrant Execution at LANZISERA's Residence**

    16. On March 19, 2021, Honorable Kenly Kiya Kato, United States Magistrate Judge, signed warrants authorizing law enforcement officers to search LANZISERA's residence (C.D. Cal. Case No. 5:21-MJ-00178) and LANZISERA's business (C.D. Cal. Case No. 5:21-MJ-00180). On March 31, 2021, officers executed both warrants.

    17. In the primary bedroom of the residence, officers found a gun safe that contained ammunition, firearms, firearm parts, a 37mm launcher, $33,105 in cash, prescription medication in LANZISERA's name, and LANZISERA's passport.

    18. In another room in the residence, officers found an AK-47-style rifle and other firearm parts and accessories. Officers also found multiple complete build kits that could be used for manufacturing handguns. Officers also found flat pieces of metal that were cut and shaped to mirror Uzi, AK-47, and Glock-style firearms. Firearm builders use "flats" to mold and bend metal into the upper receiver of a firearm.

19. On the couch in the living/family room next to where LANZISERA later told to law enforcement he was sleeping before officers entered the residence, was a machinegun. And in plain view outside the kitchen sliding glass door was a loaded handgun with a silencer equipped.

20. This picture depicts some of the firearms, including three machineguns, that officers seized:



21. On the left of the photograph above is a pistol that was found with a silencer equipped. Also visible in the photograph are three machineguns: one Uzi and two other Uzi-style firearms. On or about May 3, 2021, ATF Firearms Enforcement Officer Cody Toy, an officer specially trained and experienced in determining the characteristics and functionality of firearms, examined the three suspected machineguns, concluded that all three suspected machineguns fire more than one shot by

a single function of the trigger, and concluded that all three suspected machineguns are indeed machineguns.

22. The pictures below show some of the firearm parts and silencers that were seized as well as manufacturing equipment:

 

23. In the picture above on the left, the "flats" are visible as are a few partially completed Uzi upper receivers. In the middle of the same picture are several Polymer80 kits along with a drum magazine capable of accepting 100 rounds of .223 caliber or 5.56mm ammunition. On the far right of the picture is a 37mm launcher and six firearm silencers. On or about April 21, 2021, Firearms Enforcement Officer Toy examined the seven suspected silencers found and concluded that the suspected silencers were indeed silencers.

**E.   Results of Search Warrant Execution at LANZISERA's Business**

24. On March 31, 2021, officers executed the search warrant for LANZISERA's business. During the search, in the office, officers saw a white board with the words "Speedie" and "Dodd Street" written on it:



25. The language on the white board was significant because I had read in other reports that LANZISERA used the moniker "Speedie" and had previously admitted to being a member of the Mira Loma Dodd Street criminal street gang.

26. At the business, officers found numerous firearms parts, including AR-type lower receivers, AR-type grips, AR-type stocks, suspected silencers, and hundreds of rounds of

ammunition. Additionally, officers found approximately 1.14 grams methamphetamine on LANZISERA's desk in his office.

27. In total, while searching both the residence and the business, officers found 19 firearms, 7 silencers, about 1,700 pounds of ammunition, firearm manufacturing equipment, numerous firearm parts, and more than $33,000 in cash.

**F.   LANZISERA's *Mirandized* Interview**

28. On March 31, 2021, I read LANZISERA his *Miranda* rights and conducted an audio-recorded interview. During the interview, LANZISERA stated that he uses meth and "pills" daily. He stated that he was feeling "okay" at the time of the interview but that he was "coming down" after using drugs. LANZISERA stated that he owned the AK-47 style rifle that officers had found for "probably three years maybe" and he got it from some guy "from the military." LANZISERA said all the other guns were "from last year." He stated he had the guns "since COVID." The statement that he had owned the AK-47 for three years is significant because that means he possessed the AK-47 before his felony conviction was reduced to a misdemeanor on or about March 18, 2021.

29. LANZISERA stated that he learned how to build firearm silencers on YouTube. LANZISERA stated he knew that silencers need to be registered and he was trying to get his prior conviction expunged so he could "start doing" things "legally."

30. LANZISERA stated that he could never figure out how to convert Glocks into machineguns using selector switches. He

stated that he tried to convert Glocks into machineguns a few times, but it never worked.

31. LANZISERA stated that he bought the "flats" online and he does not remember how they were marketed online.

32. I informed LANZISERA that I had discovered he had spent at least $106,000 on firearm parts and accessories. I told LANZISERA that his spending meant he probably built hundreds of guns. LANZISERA said he would guess he made 50 or 60 firearms or maybe fewer. LANZISERA stated that some of the firearms he made were stolen and he did not report that they were stolen because he knew it was illegal for him to possess the firearms.

33. LANZISERA stated that he was not selling guns, but that he maybe "gave" some guns to people if he was threatened into "handing out a couple."

34. LANZISERA also made statements about his drug use and admitted that he would go to the business and do "speed."

### G. LANZISERA's Wife Confirmed that that LANZISERA was the Only Person Living at the Residence and that LANZISERA Had a Drug Problem

35. On March 31, 2021, I conducted an audio-recorded interview with J.L., LANZISERA's wife. J.L. agreed to speak with me after a neighbor told her that law enforcement was at the residence and she came to the residence to get the family dog. J.L. reported that she moved out of the family home because LANZISERA's drug use became out of control. She reported that he was taking blue pills that made his eyes big and prevented him from focusing. She stated she was not sure if

he used methamphetamine, but she saw pipes around that she thought were methamphetamine pipes. She stated that she was hoping that "this" would prompt him to "get help."

### H. LANZISERA's Prior Conviction and Facts of From Incident Report

36. On or about February 1, 2021, I reviewed certified conviction documents and other criminal history reports for LANZISERA and learned that LANZISERA was convicted on or about July 19, 2002, for a violation of California Penal Code Section 12020(a)(1), Manufacture, Import, Sale, or Possession of Undetectable Firearm, in the Superior Court for the State of California, County of Riverside, Case Number RIF103923.[4]

37. According to the certified minutes of sentencing, the Superior Court ordered LANZISERA not to own, possess or have under his control any firearm or deadly weapon or related paraphernalia "for LIFE" pursuant to "12021 PC/18 USC 922(g)(1)."

38. On or about March 30, 2021, I learned that about a hearing in Riverside County Case RIF103923 to petition for dismissal the felony conviction. According to the minutes from that proceeding, on March 18, 2021, the felony conviction reduced to a misdemeanor violation of California Penal Code Section M12020(a)(1).

---

[4] I reviewed certified minutes of sentencing along with a criminal history report. The certified minutes of sentencing reflect that LANZISERA was convicted of one felony count and the criminal history report shows that the felony count was a violation of California Penal Code Section 12020(a)(1).

39. On June 22, 2021, I reviewed the original Riverside County Sheriff's Office incident report dated August 3, 2001, that details the investigation that resulted in LANZISERA's conviction.

   a. According to the report, on the evening of August 2, 2001, at about 9:14 p.m., Deputy Plumer reported to a residence in Mira Loma, California, and found LANZISERA lying in a pool of blood on the floor in the kitchen of the residence. The Deputy also saw a blood trail leading to a hallway where he saw a shoe covered in blood and pellets. LANZISERA reported to Deputy Plumer that LANZISERA accidently shot himself in the foot as he was packing to go on a fishing trip. Officer Plumer asked where the gun was and LANZISERA refused to answer, but then ultimately said, "I gave it to a friend, and he left with it." LANZISERA's mother then told Deputy Plumer that LANZISERA had asked her to "get rid of" the gun and she put it in the backyard next to a chicken coop. Deputy Plumer found the gun and discovered it was a shotgun with a 14-inch barrel in violation of California Penal Code Section 12020.

   b. After LANZISERA was being transported, Deputy Plumer learned from running LANZISERA's information in his Mobile Data Terminal that as of December 1999, LANIZSERA had been entered into the County database as a member of the Mira Loma Dodd Street criminal street gang and used the moniker "Speedy." Deputy Plumer reinterviewed LANZISERA to report that he had found the shotgun, but LANIZSERA then refused to answer any more of Deputy Plumer's questions.

40. The details of this encounter help provide context to the sign found in the office during the March 31, 2021 search of the residence where officers found a whiteboard with the words "Dodd Street" and "Speedie" written on the board. Additionally, LANZISERA's actions to hide the shotgun he discharged suggest he knew the features of the shotgun and knew it was unlawful for him to possess a short-barreled shotgun.

### I. LANZISERA Arrested While High with Cash and Narcotics in May 2020 Further Confirms He is An Addict Prohibited from Possessing Firearms or Ammunition

41. From reviewing another police incident report related to the LANZISERA, I understand that on or about May 2, 2020, the Ontario Police Department responded to the LANZISERA's business because LANZISERA reported an overdose of Spencer Stevens, an individual LANZISERA identified as his friend. Officers arrived and identified Stevens and discovered he was a convicted felon who had a firearm in his waistband. During the incident, officers concluded LANZISERA was also under the influence of a controlled substance. Officers searched LANZISERA and found approximately 10 suspected Oxycodone pills in a baggie on LANZISERA's person. Ultimately, officers arrested LANZISERA for violations of California Health and Safety Code Sections 11378 (Possession of a Controlled Substance for Sale) and 11550(a) (Under the Influence of a Controlled Substance). At the time of the arrest, LANZISERA had approximately $7,075 in cash on his person as well has two bank deposit slips: one to US Bank in the amount of $21,100 and one to Chase Bank for $7,800.

**J.    Nexus of Some Firearms and Ammunition and NFRTR Query**

42. On May 31, 2021, an ATF Interstate Nexus Expert examined many of the firearms, including the AK-47 style rifle, and a sampling of the ammunition seized and confirmed that they were manufactured outside of the State of California.

43. Additionally, ATF agents ran LANZISERA through the National Firearms Registration and Transfer Record and determined that he does not have any firearm transfers registered in his name.

## CONCLUSION

44. For all of the reasons described above, there is probable cause to believe that LANZISERA has violated 18 U.S.C. § 922(o) (Possession of Machineguns).

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 6th day of
July 2021.

_____
HONORABLE KENLY KIYA KATO
UNITED STATES MAGISTRATE JUDGE